Thank you, Your Honor. The next case for argument this morning is 22-1007, Koch v. Village of Hartland. Good morning, Ms. Nicholas. Just give us one second for counsel to get situated in the courtroom. You may proceed. Good morning. May it please the Court? In 2018, the Village of Hartland, Wisconsin adopted an ordinance that bans plaintiff Karsten Koch from establishing a residence anywhere within the village because he was convicted of sex offenses in 2007, 11 years prior to the enactment. Relying on this Court's decisions in United States v. Leach and Vasquez v. Fox, the District Court found that the residency ban was not retroactive within the meaning of the ex post facto clause. The District Court's decision and the cases of this circuit upon which it relied are inconsistent with settled precedent and undercut the core interests the ex post facto clause is intended to protect. This Court should bring its case law in line with the Supreme Court and overturn the erroneous interpretation of retroactivity that is announced in Leach and Vasquez. And I think you would agree that under current Seventh Circuit precedent, your client can't succeed. I think that the District Court faithfully applied the interpretation of retroactivity that was announced in Vasquez and Leach, which is essentially that the penalties for violation of those laws only are triggered by conduct that occurs after the enactment. But I think it's very difficult to square that interpretation of retroactivity with the Supreme Court's decision in Weaver. And in Weaver, the court held that the analysis is whether the enactment changes the legal consequences of acts completed before its effective date. What about the Supreme Court's decision in Vertalis? What I'm getting at here is I'm wondering, assume for a minute that the law is retroactive. I'm wondering if we can find that the law is retroactive without overruling Leach and Vasquez. Vasquez applies Leach, but Leach, of course, was applying to a criminal statute. I think it was 18 U.S.C. 2050, where the violation was the act of traveling without reporting, which, of course, creates a post-enactment danger, I think, like 922G1. All the circuits, I think, that have addressed 18 U.S.C. 922G1 have found that it's not retroactive. In part, RICO statutes, the predicate pattern acts in RICO are not retroactive. Three strikes laws are not retroactive. Because in Vertalis, Justice Ginsburg wrote, she distinguished these laws by saying these particular laws, like RICO, like three strikes laws, like 922G, although she didn't say 922G, but they address post-enactment dangers. So, a felon is dangerous, but a felon in possession of a gun is even more dangerous, and therefore, that's how that statute is not retroactive, similar to Leach and Vasquez, I think. But here, do we have to overrule Leach and Vasquez? Because I guess what I'd like you to address is what's the post-enactment danger here with respect to this particular ordinance? Your client doesn't become any more dangerous because he moves from one town to the next, right? That's right. The city has just made a judgment that this entire class of individuals is people they don't want establishing residences in their town. So, there is not really any determination that there is a danger posed by any particular person. The city has just made a determination that for purposes of saving money or government resources, they'd rather not have any more individual sex offense convictions establishing a residence. But are you sure about that under the ordinance? Are you sure there's nowhere in the ordinance that says there's this post-enactment danger? If you move to our town, you become more of a danger. There's nothing in the ordinance that says we have an extraordinarily large number of schools or parks and you're more dangerous here than you are somewhere else. So, the act of moving into our town creates a danger that didn't exist while you were living in your other town. No, there's nothing like that in this ordinance. A conventional residency restriction like the one that was upheld in Vasquez is closely tethered to the regulatory purpose of preventing people who've been convicted of offenses involving minors from living in close proximity to places where minors congregate. This ordinance is vastly different from anything that this court or really any other court has ever looked at in that it's totally decoupled from that legitimate regulatory purpose that's been recognized by this court. It doesn't matter if Mr. Koch finds a residence that is a mile or mile and a half or two miles away from the nearest school or playground or daycare. He simply is prohibited from establishing a residence anywhere within the jurisdiction. So, it has nothing to do with whether there's any particular danger posed by his residing near a school or playground or a daycare. So, I'm not sure whether that answers the court's question, but I think that it is very difficult to square the language of Vasquez with the determination in Weaver that a law that changes the consequences of acts completed before the enactment is retroactive within the meaning of the ex post facto clause. If we do overturn Leach, how do we determine retroactivity in a setting like this? Is there any sort of retro registration law or living restriction that would not be retroactive in your view? I think that when a law like this applies to persons convicted before the enactment, it is within the meaning of the ex post facto clause retroactive. And that takes the court to an analysis of whether the enactment is punitive, whether the intent or the effects of the enactment are punitive. And courts throughout the country have looked at ex post facto challenges to various registration schemes and residency laws. And the Seventh Circuit really stands alone in finding that those types of restrictions are not retroactive when applied to individuals convicted before the enactment. So as outlined in our brief, courts have reached various conclusions about whether the effects of those enactments are punitive. And that's an intensive analysis of A, what was the intent of the legislature? And then B, multiple factors set forth in the Kennedy versus Mendoza-Martinez case. But in all of those cases, regardless of the decision that the court ultimately reached about whether it was punitive, they all proceeded from the same position that when applied to a person convicted of a sex offense prior to the enactment of the law, they're retroactive within the meaning of the ex post facto clause. The conflict with decisions of the other circuit courts is most clearly demonstrated by the decision of the Tenth Circuit in Shaw versus Patton. Whereas cases from the Sixth Circuit, the Eighth Circuit, the Second Circuit, the Eleventh Circuit, all have kind of clearly stated that they view these laws as retroactive. The Tenth Circuit in Shaw actually undertook an analysis of whether a registration scheme that included things like residency restrictions was retroactive and reached the exact opposite conclusion that the court reached in. In this case, by the district court and in Vasquez and Leach. So I think it's, the Seventh Circuit really is an outlier here that is departed in some very significant ways from what the Supreme Court has said in Weaver and also in Smith versus Doe, which analyzed a registration scheme. And it's also far out of step with the decisions of its sister circuits. And I think that this case is very important because the formulation of retroactivity that's been adopted by this court in Leach and Vasquez really undermines the interests that are protected by the ex post facto clause, which are safeguarding settled expectations and guarding against the risk that lawmakers will use retroactive legislation as a means to punish or disadvantage unpopular groups. Can I ask you to focus on something else real quick? Why should we not just decide this on the punitive prong? Well, this court certainly has the ability to decide on any grounds that are supported by the record. And in briefing below, the parties did undertake analysis and provided the court a lot of evidence about punitiveness of this ordinance. I think that it's certainly within the court's discretion to do that. And if the court decides to reach that question, I think that it's quite clear that this ordinance is punitive. In every case around the country where a court has looked at a residency restriction ordinance, it's undertaken an analysis of the extent to which that restriction is tethered to the legitimate non-punitive purpose of the protection of children. So there are three cases from this court where such restrictions were upheld. Vazquez, which was 500 feet from daycares. So people with convictions involving minors living 500 feet from daycares. In Warner versus Green Bay, similar idea. People convicted of sex offenses involving minors couldn't live within a particular distance of child-centric locations. And then the same thing with this court's en banc decision in Hope. And I think you see that same logic reflected in all of the cases around the country, which is that the protection of children is a legitimate non-punitive purpose. Here we have something that stands apart and is really in a class of its own. It's a complete ban, and it does not matter how close or far the residence is from a place that caters to children. So this really can't be likened to any of the restrictions that have been upheld here or elsewhere, where the restriction was found to be non-punitive. If we agree with you about retroactivity, would we have to overturn both Leach and Vazquez? I think Vazquez would be impossible to square. What about Leach? That's why I ask. Yeah, it is a little bit different because the conduct that was made illegal was crossing state lines and not registering after doing so. So I think that if you look at Weaver and conduct a straightforward analysis of whether the enactment is changing the legal consequences of a crime committed before the enactment, I think it's quite possible that SORNA, the registration statute, does that. I think it's clear that it would be difficult to square Vazquez with the determination here that the restriction is not retroactive. So I'd like to reserve the remainder of my time for rebuttal. Yes, thank you. Thank you. Mr. Wirth? Thank you. I'm Joseph Wirth from Milwaukee, representing the Village of Heartland. I believe that in today's consideration, what we are asking or what the court is being asked to do is fundamentally change its evaluation of what retroactivity means, without any support for it and with an ill-suited vehicle to do so. I was a little bit concerned, Mr. Wirth, that the court in addressing this didn't even mention the hope en banc and the identification in the majority opinion that there was tension in our own case law or Judge Scudder's concurring opinion that called for a change. I was a little troubled by that. And I think that what the district court undertook is an analysis of the two cases that are clearly controlling, rather than the discussion in the dissent in another. I think that with respect to . . . Well, the majority opinion in hope noted the tension. That wasn't a dissent. Judge Scudder's opinion was a concurrence. Just the not even acknowledging it is what troubled me, because it is binding. I understand the court's hands were tied. We haven't overruled those, but there was no acknowledgement of it or how it might impact the case. Right. And I think that part of it is because the invitation to effectively change the controlling definition of retroactivity is premised upon a citation to a couple of Supreme Court cases that I think are inappropriate for the discussion that's being undertaken. The Weaver case essentially says change the consequences of acts that occurred before the enactment of the ordinance. Now, the Seventh Circuit has consistently said that the acts we're going to focus on are the acts that invoke the consequence, so to speak. And in this case, that would be the acts that occur after . . . But what about Vertalis, the Supreme Court's case in Vertalis? Are you familiar with that? I am only in passing familiar with the idea that in a retroactivity analysis, what changes the conduct that makes the consequence more appropriate for additional . . . Yeah, that's a very tough case for you on retroactivity, I think, because in that case, Judge Ginsburg, writing for the majority of the Supreme Court, said that a statute that prevented . . . It was an immigration statute, and the immigration statute provided for immigrants to travel outside the United States. But then when they came back to the United States, they could be detained and perhaps denied entry into the country. And Judge Ginsburg said that statute was retroactive because it applied to the past conduct, the past conviction of the immigrant. And the future travel didn't have anything to do with it. Now, Justice Scalia, joined by others, wrote a dissent in that case, but Justice Ginsburg said that that applies to the past conduct. It's retroactive. And that's, I think, a little bit of a problem for you because it's sort of . . . I don't know how we square Vertalis with this particular case. I think the best way I can characterize it is that retroactivity is or isn't. The argument by the appellant in this case is it's a really fine line because, sure, what the ordinance anticipates is future conduct that may invoke consequences. So uncertain future conduct invoking uncertain consequences. Keep in mind this ordinance has an appellate provision that anybody who believes they may be . . . Let me just read you from Vertalis because that's what I'm so troubled . . . I mean, I'm troubled, but I don't know how we . . . The government argues that no retroactive effect is involved in this case for the legislature has not attacked any disability to past conduct. Rather, it has made the relevant events the alien's post-legislative act of returning to the United States. We find this argument disingenuous. That's your argument. I mean, that's it. And then she goes on to write that past misconduct, in other words, here the conviction, not present travel, is the wrongful activity Congress targeted. That's a problem because that's what you're targeting is the past activity. Let me go a little closer to Holmes so that you can answer Judge Kirsch's question. Smith, you did say you weren't as familiar with Vertalis, but surely you are Smith. And Smith . . . With this district or with the Eastern District? With the Eastern District. Smith v. Doe. Supreme Court. Okay. The Alaskan case. Yes. Sure. And there the Supreme Court defines the Alaska registration law as retroactive and says that it applies to past conduct, which is and was a crime. Past conduct, which is and was a crime. And then goes on to explain that the obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation. Where with the village of Heartland is the present or repeated violation? It's certainly not moving to the village. The violation at issue here is the prior sex offense. See, I think with respect to the Smith v. Doe case, the Alaskan enactment applied immediately to all the prisoners in the system and those recently released. So it became an immediate requirement that they file these registration materials, even while they're still in prison, that they produce this personally identifiable information and that they acknowledge that it will become public. The Heartland ordinance, and I would use probably an exaggeration by saying the day of enactment, the prisoners in the Alaskan prison system had to do these things, as did the recent releasees. In Heartland, the day of the enactment of this ordinance, nothing changed for the designated offenders within the village of Heartland. There were 35-some ordinance violators who didn't have to move. They didn't have any registration requirements, any additional fines. That's a good argument for you, okay? That's a good argument. That's the 922G argument, right? Exactly. That's exactly it. But in Vartalis, Justice Ginsburg says basically to Justice Scalia, no, no, no, that's post-enactment danger, right? You're making the three strikes argument, you're making the RICO argument, the 922G argument. We need to deal with that, right? Correct. Because those are not retroactive. But Justice Ginsburg says, well, there's a good reason. It's the post-enactment act that makes the person more dangerous. Here, what is more dangerous about this individual moving from one town to the next? I can tell you that the justification on the village's standpoint. I know what the justification is on the village's point, but what makes him more dangerous? It's not that the 10-pound bag will only take 10 pounds. So at some point, the ability to protect the children, to protect the citizenry, the health, safety, and welfare of the village residents is a resource that the village is permitted to control. That's a very interesting argument. But where does it say that in the ordinance? Because that's an interesting argument. You say, look, we have only five police officers, right? And five police officers can only keep contact with 100 sex offenders. I'm just making these numbers up. Sure, sure. We get to 101, and it becomes more dangerous for our town. But the town just, it seems like they just take arbitrary, I mean, I know what they're trying to do, right? I mean, we all know what they're trying to do. But it seems like they just take arbitrary numbers, and there's no analysis of the post-enactment danger at all in the ordinance. And it is, of course, the statute that we're interpreting, right? Well, it is, yeah, in this case, the legislation, the ordinance, correct. And would that even matter if it's an act on the part of the village that causes the danger as opposed to an act on the part of somebody moving in? You just said that you don't have enough officers to monitor this, and so it would become more dangerous because you didn't have enough officers. But that's, wouldn't that be something on the village's part, that the village didn't have enough officers as opposed to the action of the individual moving in? I think to answer that question, most of the discussion here this morning is directed as though this were a residency requirement ordinance. And what this is is a placeholder ordinance. This is a moratorium. This is an opportunity for the village to say, in order to preserve that argument, we need time to go and adopt a residency ordinance that is compliant, constitutionally compliant. But it's been in effect for four years. That is true, but there is nothing that, there is no analysis with respect to retroactivity that anticipates how long the legislation may take. I would suggest to the court that there's been two years of COVID stuff, those kinds of things. So, your question is... But what does that mean, though, under the ex post facto clause, that Mr. Cock here doesn't have standing? I mean, what's the, where can we say under the Constitution that we can provide those legislature with this time and how much time to get a constitutionally effective piece of legislation? Don't we just strike the legislation and tell the town to start over? And when you have something that's constitutional, apply it. And until then, you've got nothing. Well, if the ordinance, if the moratorium ordinance is unconstitutional, then yes. But the moratorium ordinance is subject to the same analysis as any other ordinance that would control conduct, both retroactivity and punitive damage. But how is the fact that it's a moratorium, how does that make it constitutional? What's the difference if this were a moratorium versus a permanent ordinance? Certainly it goes to the punitive element of the ordinance. But, yeah, I'm talking about retroactivity only this morning. Today's discussion is retroactivity. The idea being that the fact that it is moratorium, it was never, it is never intended to be a permanent restriction. In other words, it may not be in existence. But even if it's not permanent, for Mr. Coach, when he tried to move, he's alleging a constitutional violation. I don't think it matters. It's okay because you can violate his constitutional rights for a couple years. This isn't permanent. I would hate for a police officer to arrest me without probable cause and say, don't worry, Kersh, it's not permanent. It could change tomorrow, right? Give me a couple of days here and everything will be fine. There's no Fourth Amendment violation. It's not permanent. No, and obviously not. And I think that to address the court's concern, what we're talking about here is an ordinance. So the moratorium element of it goes to whether or not this is punitive. But the discussion, please focus on the retroactivity element, Mr. Worth. So I will. The idea being that this court has adopted the provision that if what is anticipated is what may happen in the future and may produce a consequence in the future, that is by definition prospective. If it creates a post-enactment danger, I think that's what Leach says. I think Leach says that the statute that they were analyzing in Leach was 18 U.S.C. 2050. And the post-enactment danger, which you can understand, you have a sex offender moves from one town to the next and doesn't register in the new town or the new state, that creates a post-enactment danger in that state because for all the reasons that registrations are valid and are perhaps good public policy, perhaps not, but all the reasons that they exist is they try to, what's the word, tamp down that post-enactment danger, right? Anticipate. Lesson or whatever. Right. Can I ask you one question on the punitive nature? Sure. Should we decide that, if we decide the statute is retroactive, should we decide that or should we send that back to the state court or to the district court? I think that what is in the elements, the stipulated facts that are presented to this court, probably give this court enough to view whether or not, you know, our position was criticized as singular application to Mr. Cook himself. The answer is there's only one individual. He's the example, so. It would be easy for us to do the punitive analysis if there was a parallel case. Correct. But you agree there isn't, right? There is no parallel case to this and, in fact, there probably is no parallel experience in the village of Harlem, so. It's an odd thing because it would be hard, you know, you can imagine if this statute doesn't violate the Exposed Facts Clause, it's determined not to be retroactive and it's determined not to be punitive, there may be a lot of communities in Wisconsin that pass this, an ordinance similar to this, and then you have folks that are on the sex offender registry that just can't move. And how close do you become to banishment, right, historical banishment? Right. But that's an issue for another day. Right, and I think that that issue is hopefully addressed, as the court recognized, by the fact that from the appellant's perspective, probably the toughest argument is that the enactment of this ordinance didn't do anything to the current designated offenders within the village of Harlem. It had no immediate impact on them. This is one of those vehicles, oops, my time's up, where it's prospective in nature and truly in a retroactivity analysis, you're not going to find an ordinance that's more prospective than this. Thank you. Thank you, Mr. Worth. Thank you. Ms. Nicholas. You're on mute. Two years in, we're still here. We all do it. Thank you. I think that the Supreme Court made clear in Selig that analyzing the punitive effect of a particular enactment doesn't turn on the effect it has on one particular individual. So the argument that the individuals who lived in the city at the time didn't have to move out or that Mr. Koch wasn't rendered homeless by virtue of this ordinance really isn't pertinent to an analysis of whether the ordinance violates the ex post facto clause. I think as Judge Kirsch pointed out, it's very difficult, and I didn't hear the village articulate anything about Mr. Koch's moving from Neshtoa to Heartland that is a danger in and of itself that would justify finding that this is prospective in operation under the controlling case law. So for all of those reasons and the reasons that this Court has already noticed in full, we're asking that the Court reverse its decisions about retroactivity and reverse the decision of the District Court and remand for a decision on whether this ordinance is punitive. So if the Court doesn't have any other questions, that's... No further questions. Thank you. Thanks to both counsel and the case, we will take the case under advice.